SAMUEL, Judge.
This is an action originally against Southern Railway Company for personal injuries-incurred as a result of a fall on premises-allegedly owned by that defendant and, alternatively, against National Sugar Refining Company, plaintiff’s employer, for workmen’s compensation. New Orleans-Terminal Company, the true owner of the property, has been substituted as a party defendant and Southern Railway is no longer involved. Plaintiff’s compensation claim has been dismissed on his motion and the only matter before this court is the claim for personal injuries against New Orleans-Terminal Company. Plaintiff has appealed *537 -from a judgment in favor of that defendant, •dismissing the suit.
Plaintiff contends the premises were defective and unsafe, with resulting liability-on the part of defendant, in two respects: (1) defective construction and improper ■drainage caused a flow of water down the .stairs involved, making them wet and slippery; and (2) the stairs contained loose treads and a railing which was improperly -welded, loose and in need of repair. Defendant contends that the premises were -neither defective nor unsafe and, alternatively, that plaintiff was guilty of contributory negligence.
Plaintiff had been employed by National .'Sugar as a sugar sampler for more than 30 years. While so employed on June 14, 1961 he was working on Chalmette Wharf which is owned and maintained by New Orleans 'Terminal. The wharf is located in the Parish of St. Bernard and consists of a slip and two docks perpendicular to the Mississippi River. The accident occurred on Dock 2 which is on the east side of the slip. Dock 2 is roofed, contains two levels and is •open on both sides. At various places there .are metal stairs connecting the ground and second floor levels. Plaintiff fell during the morning while descending one of these stairways. The second level end of that stairway is about SO feet from either open side.
The stairway in question is approximately 15 feet high and consists of approximately 23 steps. The steps, constructed of heavy metal with treads in a raised pattern designed to keep the metal from being smooth and slippery, are between 9 and 10 inches wide, 5 feet long, and 7 to 8 inches in height. The grooves or rises in the treads were not worn or slick. There is a guard rail around the top of the stairs and a hand rail of round 2 inch cast iron pipes on each side of the stairway.
Bulk sugar was being unloaded at Dock 2 on the day of the accident. The loose sugar came off a vessel onto conveyor belts which carried it into box cars on a railroad siding. Plaintiff’s duties as a sampler consisted of taking samples of sugar off the conveyor belt as it was being unloaded from the vessel, putting the sugar in a galvanized can and taking the same to the office where it was mixed in jars. At the time of the accident he was not carrying anything and both hands were free.
The only testimony relative to the occurrence of the accident is that given by the plaintiff himself. He testified the docks, and the stairs which he used in descending from the second to the first level of the wharf, were wet with a mixture of sugar and water which made them slippery. He thought the water had come from a rain the preceding night. After the first two or three steps he held the rail to his right as he descended, fell at the eighth or ninth step and bounced down the rest of the way. He did not recall whether there were loose treads in the stairs or whether the rail was loose or solid. He had used the steps three or four times a day over a period of more than 30 years and had often discussed with his fellow employees the dangerous condition of the steps because of the mixture of sugar and water.
Only one witness testified on behalf of the plaintiff relative to the condition of the premises, Italo M. Francalancia, who had been a representative of National Sugar’s compensation insurer and who had examined the steps about three weeks after the accident. He testified he found a loose, un-welded rail on the left descending side of the stairway and one or two loose steps about the second or third from the top. In his report to his company he stated the steps could not be considered “very safe but are really not dangerous”. We note that even if we accept both Francalancia’s testimony and that of the plaintiff, the fall could not have been caused by the loose rail or steps the former said he had found. For Francalancia testified the loose rail was on the left descending side of the stairway and the one or two loose steps were about the second or third steps from the top, while plaintiff testified he fell at the eighth *538 or ninth step of the 23 step stairway while holding the right descending rail.
On behalf of the defendant four of its employees, those charged with the supervision and maintenance of the wharf, testified as to the condition of the premises. They were its agent, assistant agent, track supervisor and an assistant division engineer. Each examined the area either on the day the accident occurred or shortly thereafter. Their testimony is to the effect that the steps were not loose, the hand rails were properly welded and solid and no repairs were needed or made. Some of these defendant witnesses also testified that although many persons had used the steps for many years, no one other than the plaintiff had ever fallen on them and that no complaints of defects in the steps had ever been received. In the normal unloading operation some sugar, and on some occasions also water, is tracked around by workers and the defendant customarily hosed out and cleaned the area after the unloading operation had been completed. In the instant case the accident occurred during the unloading operation and the area could not be cleaned or kept clean at that time.
We feel no need to discuss plaintiff’s contention relative to improper drainage causing a flow of water down the stairs beyond saying there . is no evidence even tending to prove that the water on the steps was there as a result of improper drainage. Nor does the record contain any direct evidence as to where that water came from. The only mention of the source of the water is in the testimony of the plaintiff, who said it may have rained the night preceding the morning of the accident, and the testimony of one of the defendant witnesses, who said that in damp periods there would be water on the steps due to the fact that the wharf was located on the river.
Plaintiff has failed to prove defective construction, improper drainage or any disrepair of the stair or railing which caused or contributed to his fall. Nor did the existence of water and sugar on the steps constitute an unreasonably dangerous condition. While the presence of sugar and water may, and in all probability did, make the steps slippery, it was a condition which could not be corrected during the unloading operation. From all of the evidence we conclude the premises were safe for the purpose for which they were being used.
The judgment appealed from is affirmed.
Affirmed.